IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TENNESSEE
EASTERN DIVISION

ANTHONY TAYLOR,

    Petitioner,

v.                                        No. 1:15-cv-01270-JDB-egb
                                            Re: 1:13-cr-10041-JDB-1

UNITED STATES OF AMERICA,

    Respondent.

ORDER DENYING AMENDED § 2255 PETITION,
DENYING CERTIFICATE OF APPEALABILITY,
AND
DENYING LEAVE TO APPEAL *IN FORMA PAUPERIS*

Petitioner, Anthony Taylor, has filed an amended motion to vacate, set aside, or correct his sentence (the "Amended Petition"), pursuant to 28 U.S.C. § 2255.[1] For the following reasons, the Amended Petition is DENIED.[2]

BACKGROUND

In May 2013, a federal grand jury sitting in the Western District of Tennessee returned a two-count indictment charging Taylor with unlawful possession of a firearm by a convicted felon, in violation of 18 U.S.C. § 922(g), and unlawful possession of a stolen firearm, in violation of 18

---

[1]The original petition (Docket Entry ("D.E.") 1) was amended by the attorney appointed to represent Petitioner in his claim under *Johnson v. United States*, 135 S. Ct. 2551 (2015). (D.E. 6.) The supplemental pleading presented argument in support of the *Johnson* claim and also added a claim under *Mathis v. United States*, 136 S. Ct. 2243 (2016). The Court allowed the amendment. (D.E. 7.) Petitioner subsequently submitted additional briefing *pro se* (D.E. 9-1), and the Court allowed the supplementation (D.E. 10). The Amended Petition is thus comprised of all claims asserted and argued in D.E. 1, 6, and 9-1.

[2]Unless otherwise noted, record citations in this order are to Case No. 1:15-cv-01270-JDB-egb.

U.S.C. § 922(j). (*United States v. Taylor*, No. 1:13-cr-10041-JDB-1 (W.D. Tenn.), D.E. 13.) The charges stemmed from the Defendant's[3] possession and subsequent sale of a twelve-gauge shotgun, which he stole from his uncle. (Presentence Report (the "PSR") ¶¶ 4-8.) Assistant Federal Public Defender M. Dianne Smothers represented Taylor throughout his criminal case. (D.E. 20-1; No. 1:13-cr-10041-JDB-1, D.E. 9.)

The case was tried before a jury, which returned a guilty verdict on both counts of the indictment. (No. 1:13-cr-10041-JDB-1, D.E. 42.) In anticipation of sentencing, the United States Probation Office advised in the PSR that the Defendant was subject to a fifteen-year mandatory minimum sentence under the Armed Career Criminal Act ("ACCA"), 18 U.S.C. § 924(e)(1), for his felon-in-possession offense. (PSR ¶ 91.) The armed career criminal designation was based on his prior conviction for Tennessee third-degree burglary, a Kentucky first-degree burglary conviction, and two Tennessee convictions for robbery. (*Id.* ¶¶ 26, 28, 32-33.) The PSR calculated his advisory sentencing range under the United States Sentencing Commission Guidelines Manual ("Guidelines," "Sentencing Guidelines," or "U.S.S.G.") at 262 to 327 months' incarceration.[4] (PSR ¶ 92.) The calculation reflected an enhancement under U.S.S.G. § 4B1.4(b)(3)(A), which advises an increased offense level for armed career criminals who use or possess a firearm in connection with a crime of violence. (*Id.* ¶ 21.)

---

[3]In discussing the criminal case, the Court will sometimes refer to the Petitioner as the "Defendant."

[4]All references to the Sentencing Guidelines are to those in effect on the date of the Defendant's sentencing. *See* United States Sentencing Commission, *Guidelines Manual* (eff. Nov. 1, 2013).

Defense counsel filed a position statement in which she argued, among other things, that Taylor did not qualify as an armed career criminal and that the sentence should account for his limitations, including learning disabilities and blindness in one eye. (No. 1:13-cr-10041-JDB-1, D.E. 54.) She did not argue that the Defendant's age should be considered by the Court in devising an appropriate sentence.

A sentencing hearing was held on August 21, 2014. (*Id.*, D.E. 56.) At that time, the Defendant was forty-five years old. Urging the Court to depart downward from the advisory Guidelines range, Smothers contended that the statutory minimum sentence of 180 months' incarceration would best account for Taylor's medical condition and age, and would suffice to insure the safety of the community:

> We are asking Your Honor to vary somewhat, most specifically in light of his multiple serious medical situations. He has one eye. He has lost the vision in his other eye as a small child because of an assault that an adult committed on him. He has other serious medical problems. They're outlined in the presentence report.
>
> But because of his age, the other problems he has, but most specifically his eye, I think he's at more risk of an injury or of a permanent disabling situation.
>
> \* \* \*
>
> We're asking Your Honor to sentence him to the statutory minimum of 180 months. We understand the [G]uidelines put him above that, simply by virtue of having proceeded to trial. Anyone who faces this sentencing category and proceeds to trial is going to be thrown substantially above the statutory minimum.
>
> ***However, it's our position that a sentence of 180 months for someone in Mr. Taylor's age, his medical condition [is appropriate].*** Your Honor sees his criminal history there. It's not the best history. He does have a fairly extensive criminal history. ***But nevertheless, the age at which he would return to the community would be such that I think danger to the community would be satisfied by a sentence of 180 months***. It's still a substantial increase above where he would be but for his prior convictions.
>
> ***I think it would adequately protect the community.***

3

* * *

> So we would ask Your Honor to consider making a recommendation for a medical facility.

* * *

> So I think that a sentence of that length certainly would be adequate and sufficient under the [G]uidelines and the statute.
>
> We can't -- as the way the law is now we can't avoid the statute as we stand here today, although our objections are noted. But I would ask Your Honor for that recommendation for placement and a sentence of 180 months. Which although it is the statutory minimum, it's below the suggested [G]uideline range, it nevertheless is significantly above where he would be but for his history.
>
> And I know the history is there; we have to deal with it. ***But it's a significant sentence in any court and for any defendant, certainly someone of this age***.

(*Id.*, D.E. 65 at PageID 303-06 (emphasis added).)

The Court declined to depart downward from the Guidelines range and imposed a sentence of 262 months' incarceration. (*Id.*, D.E. 56.) Taylor appealed, arguing, among other things, that his "sentence was procedurally unreasonable because the sentencing record shows that the court did not discuss explicitly [his] mitigation argument that his advanced age upon his release would be sufficient to protect the public from any further crimes, thus weighing in favor of a downward departure." *United States v. Taylor*, 800 F.3d 701, 714 (6th Cir. 2015).

The Sixth Circuit rejected his assertion. Noting that *United States v. Bostic*, 371 F.3d 865, 872 (6th Cir. 2004), requires a defendant to adequately raise his objection before the sentencing judge, the court of appeals found that the failure of the undersigned to "make even a cursory mention of Taylor's age-recidivism argument" was due to the Defendant's failure to "raise the objection with a sufficient degree of specificity under the circumstances to apprise the court of the true basis for his objection." *Taylor*, 800 F.3d at 715 (citing *Bostic*, 371 F.3d at 871). "The one and only time Taylor raised his age-recidivism argument," the court found, "was in a fleeting

manner, and buried within a series of interrelated objections concerning his personal characteristics, including his age, disabilities, and request for placement in a medical facility." *Id.*

The appellate court also determined that, "[a]lthough the district court did not refer to Taylor's age-recidivism argument explicitly when it denied a downward departure, [it] did consider Taylor's personal characteristics, and set forth a sufficient explanation for Taylor's within-Guidelines sentence." *Id.* And with regard specifically to public safety, the Sixth Circuit found that the sentencing "transcript show[ed] implicitly, though not explicitly, . . . that the district court concluded that the community's interest in safety and deterrence would not be served by granting Taylor a shorter sentence." *Id.* at 715-16.

In November 2015, the prisoner initiated the instant § 2255 case and, with the aid of appointed counsel, now asserts the following claims:

> Claim 1: Petitioner no longer qualifies as an armed career criminal as a result of the United States Supreme Court's decisions in *Johnson* and *Mathis*. (D.E. 6; D.E. 9-1.)
>
> Claim 2: Defense counsel rendered ineffective assistance by failing to adequately raise the age-recidivism argument at sentencing. (D.E. 1 at PageID 4.)
>
> Claim 3: Defense counsel rendered ineffective assistance by failing to raise the age-recidivism argument in her position statement challenging the PSR. (*Id.*)

DISCUSSION

Respondent, the United States of America, has filed a response to the Amended Petition (D.E. 17) along with the affidavit of defense counsel (D.E. 20-1). Having reviewed the briefs, the affidavit, and the record in the underlying criminal case, the Court determines that Petitioner has failed to establish entitlement to relief on any of his claims. Because the claims are, variously,

5

belied by the record in the criminal prosecution or without merit as a matter of law, no hearing is necessary.

I. Legal Standards

A prisoner seeking to vacate his sentence under § 2255 "must allege either: (1) an error of constitutional magnitude; (2) a sentence imposed outside the statutory limits; or (3) an error of fact or law that was so fundamental as to render the entire proceeding invalid." *Short v. United States*, 471 F.3d 686, 691 (6th Cir. 2006) (internal quotation marks omitted). "In reviewing a § 2255 motion in which a factual dispute arises, the habeas court must hold an evidentiary hearing to determine the truth of the petitioner's claims." *Valentine v. United States*, 488 F.3d 325, 333 (6th Cir. 2007) (internal quotation marks omitted). "[N]o hearing is required," however, "if the petitioner's allegations cannot be accepted as true because they are contradicted by the record, inherently incredible, or conclusions rather than statements of fact." *Id.* at 333. A petitioner has the burden of proving that he is entitled to relief by a preponderance of the evidence. *Pough v. United States*, 442 F.3d 959, 964 (6th Cir. 2006).

A § 2255 claim that an attorney's ineffective assistance has deprived a criminal defendant of his Sixth Amendment right to counsel is controlled by the standards set forth in *Strickland v. Washington*, 466 U.S. 668 (1984). *Grant v. United States*, 72 F.3d 503, 506 (6th Cir. 1996). To succeed on such a claim, a petitioner must demonstrate two elements: (1) "that counsel's performance was deficient" and (2) "that the deficient performance prejudiced the defense." *Strickland*, 466 U.S. at 687. "The benchmark for judging any claim of ineffectiveness must be whether counsel's conduct so undermined the proper functioning of the adversarial process that the trial cannot be relied on as having produced a just result." *Id.* at 686.

6

To establish deficient performance, a petitioner "must show that counsel's representation fell below an objective standard of reasonableness." *Id.* at 687-88. A court considering a claim of ineffective assistance must apply "a strong presumption" that counsel's representation was "within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action might be considered sound trial strategy." *Id.* at 689 (internal quotation marks omitted). Prejudice is shown where there exists "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 694. To demonstrate prejudice in the sentencing context, the petitioner must show a reasonable probability that, but for counsel's deficient performance, he would have received a lower sentence. *Spencer v. Booker*, 254 F. App'x 520, 525 (6th Cir. 2007) (citing *Glover v. United States*, 531 U.S. 198, 200 (2001)).

II.     Claim 1

Petitioner asserts that he does not qualify as an armed career criminal under the ACCA, arguing that the Supreme Court's decisions in *Johnson* and *Mathis* disqualified all four of his state convictions as ACCA predicates. The Court finds that, although he is correct that his Tennessee third-degree burglary conviction can no longer be used as a predicate offense, his Tennessee robbery and Kentucky burglary convictions still qualify.

Under the ACCA, a person who is convicted of being a felon in possession of a firearm and who "has three previous convictions . . . for a violent felony or a serious drug offense . . . committed on occasions different from one another . . . shall be . . . imprisoned not less than fifteen years." 18 U.S.C. § 924(e)(1). The statute defines "violent felony" as

> any crime punishable by imprisonment for a term exceeding one year . . . that . . .
> (i) has as an element the use, attempted use, or threatened use of physical force

7

against the person of another; or (ii) is burglary, arson, or extortion, involves use of explosives, or otherwise involves conduct that presents a serious potential risk of physical injury to another.

18 U.S.C. § 924(e)(2)(B). Subsection (i) is known as the "use-of-force" clause. *United States v. Priddy*, 808 F.3d 676, 683 (6th Cir. 2015). The first part of subsection (ii) is the "enumerated-offenses" clause, while the phrase "otherwise involves conduct that presents a serious potential risk of physical injury to another" is referred to as the "residual clause." *Id.*

In *Johnson*, the Supreme Court held that the residual clause is unconstitutionally void for vagueness. *Johnson*, 135 S. Ct. at 2556-57. Therefore, an enhanced sentence under that clause violates due process as guaranteed by the Fifth Amendment. *Id.* The decision left the ACCA's use-of-force and enumerated offenses clauses undisturbed. *Id.* at 2563.

Petitioner does not explain why he believes *Johnson* invalidates the use of his prior convictions under the ACCA. Indeed, the Sixth Circuit has already held that *Johnson* did not change his ACCA status.[5] *See Taylor*, 800 F.3d at 716-20 (holding *Johnson* had no impact on the Defendant's prior convictions).

Taylor, aided by appointed counsel, submits alternatively that his prior convictions no longer qualify as ACCA predicates after the Supreme Court's decision in *Mathis*. The Government concedes that Taylor's Tennessee third-degree burglary conviction can no longer be counted under

---

[5]The inmate has also argued in a *pro se* submission that "in light of *Johnson v. United States*[,] the [§] 924(c) used against [him] made [his] sentence unconstitutional[] due to the clarification of the definition of 'crime of violence.'" (D.E. 9-1 at PageID 29.) Eighteen U.S.C. § 924(c) prohibits the knowing use, carrying, or possession of a firearm during and in relation to a crime of violence. 18 U.S.C. § 924(c)(1). Petitioner's argument is rejected, as he was not prosecuted under § 924(c).

8

the ACCA after *Mathis*. (*See* D.E. 17 at PageID 69 (citing *Cradler v. United States*, 891 F.3d 659, 671 (6th Cir. 2018).) Applying *Mathis*'s precepts, the Sixth Circuit in *Cradler* held that the Tennessee third-degree burglary statute, as interpreted by the Tennessee Supreme Court, "include[s] offense conduct . . . that lies outside the narrower definition of generic burglary." *Cradler*, 891 F.3d at 671.

Without the third-degree burglary conviction, the validity of Petitioner's ACCA status depends on whether his three remaining state convictions qualify as violent felonies. The Court agrees with Respondent that the inmate has provided "no argument or other authority" for his contention that the convictions are not violent felonies. (D.E. 17 at PageID 70.) The Government is also correct that binding precedent forecloses relief.

To determine if a conviction constitutes a violent felony under the ACCA's enumerated offenses or use-of-force clauses, a court must first apply the "categorical approach," which focuses on the statute under which the petitioner was convicted, rather than his conduct. *Cradler*, 891 F.3d at 667 (citing *Taylor v. United States,* 495 U.S. 575, 600 (1990)). If the statute is "divisible," meaning it describes multiple offenses, the court may "employ the 'modified categorical approach.'" *United States v. House*, 872 F.3d 748, 753 (6th Cir.) (quoting *Descamps v. United States*, 570 U.S. 254, 257 (2013)), *cert. denied*, 138 S. Ct. 367 (2017). That approach permits the examination of "a limited class of documents" from the defendant's prior criminal case in order "to determine which alternative formed the basis of the defendant's . . . conviction." *Id.* (quoting *Descamps*, 570 U.S. at 257). The Supreme Court in *Mathis* clarified that a statute is divisible if it lists alternative elements, not alternative means of satisfying one or more elements. *Mathis*, 136

9

S. Ct. at 2249. If the statute lists alternative means, then it is "indivisible," and resort to the limited class of documents is prohibited. *Id.* at 2448.

Under either approach, the "second step" in a court's analysis is to "determine whether the offense, as described either by the entirety of an indivisible statute or by the relevant alternative of a divisible statute," *United States v. Pittman*, 736 F. App'x 551, 554 (6th Cir.), *cert. denied*, 139 S. Ct. 608 (2018), matches the generic definition of an enumerated offense, *Mathis*, 136 S. Ct. at 2247, or the federal definition of "physical force" as "force capable of causing physical pain or injury to another person," *United States v. Southers*, 866 F.3d 364, 366 (6th Cir. 2017) (quoting *Johnson v. United States*, 559 U.S. 133, 138, 140 (2010)). If there is a mismatch, the prior conviction is not a violent felony under the ACCA. *Cradler*, 891 F.3d at 667 (citing *Descamps*, 570 U.S. at 257).

Prior to *Mathis*, the Sixth Circuit held, in *United States v. Mitchell*, 743 F.3d 1054 (6th Cir. 2014), that robbery under Tennessee Code Annotated § 39-13-401 is categorically a violent felony under the ACCA's use-of-force clause. *Mitchell*, 743 F.3d at 1059-60. In fact, the court in Petitioner's direct appeal relied on *Mitchell* in rejecting his argument that his Tennessee robbery convictions are not ACCA predicates. *See Taylor*, 800 F.3d at 718. Although both *Mitchell* and *Taylor* were decided prior to *Mathis*, the Sixth Circuit has, post-*Mathis*, reaffirmed its ruling in *Mitchell*. *See Southers*, 866 F.3d at 366-68 (reaffirming that Tennessee robbery is categorically a violent felony under the ACCA); *United States v. Lester*, 719 F. App'x 455, 458-59 (6th Cir. 2017) (holding *Mitchell* "continues to govern" after *Mathis*). Petitioner's two Tennessee robbery convictions are therefore violent felonies under the ACCA.

The prisoner's contention that his Kentucky first-degree burglary conviction is not an ACCA predicate is likewise foreclosed by binding circuit precedent. For purposes of the ACCA, "[g]eneric burglary 'contains at least the following elements: an unlawful or unprivileged entry into, or remaining in, a building or other structure, with intent to commit a crime.'" *United States v. Malone*, 889 F.3d 310, 311 (6th Cir. 2018) (quoting *Taylor*, 495 U.S. at 598), *petition for cert. filed*, No. 18-6671 (U.S. Nov. 13, 2018) . The Kentucky burglary statute provides that "[a] person is guilty of burglary in the second degree when, with the intent to commit a crime, he knowingly enters or remains unlawfully in a dwelling." Ky. Rev. Stat. Ann. § 511.030(1). Kentucky first-degree burglary "encompasses the same definition as second degree burglary, but is enhanced because the offender is armed, injures another, or threatens to use a dangerous instrument against another." *Taylor*, 800 F.3d at 719 & n.7 (citing Ky. Rev. Stat. Ann. § 511.020).

The appellate court in Taylor's direct appeal held "that first degree burglary in Kentucky is a predicate offense under the 'enumerated offenses' clause of the ACCA," as it describes the generic version of burglary. *Id.* at 719 (citing *United States v. Jenkins*, 528 F. App'x 483, 484-85 (6th Cir. 2013)). Recently, the Sixth Circuit reaffirmed, post-*Mathis*, that the Kentucky statute's description of burglary matches generic burglary. *See Malone*, 889 F.3d at 311, 313 (holding Kentucky second-degree burglary is an ACCA predicate under the enumerated-offenses clause).

Accordingly, because the inmate's Kentucky first-degree burglary conviction and his two Tennessee robbery convictions are violent felonies under the ACCA, he was properly sentenced as an armed career criminal. Claim 1 is DENIED.

III.     Claims 2 and 3

Taylor maintains that counsel rendered ineffective assistance by failing to adequately argue at sentencing (Claim 2) and in her position statement prior to sentencing (Claim 3) that a period of incarceration of 180 months, which would result in the Defendant's release at age sixty, would be sufficient to protect the public. He points out that the Sixth Circuit, in *United States v. Payton*, 754 F.3d 375 (6th Cir. 2014), acknowledged data showing "that '[r]ecidivism rates decline relatively consistently as age increases.'" *Payton,* 754 F.3d at 378 (alteration in original) (quoting United States Sentencing Commission, "Measuring Recidivism: The Criminal History Computation of the Federal Sentencing Guidelines" at 12 (2004)). The *Payton* court held that a forty-five-year sentence, which represented a twenty-three-year upward departure from the top of the Guidelines range, was procedurally unreasonable because it was not supported by a "significant explanation" as to why the defendant should be "ke[pt] . . . in prison until he is ninety-one years old." *Id.*

Respondent argues that the inmate has not shown he was prejudiced by his attorney's failure to make a specific age-recidivism objection to a within-Guidelines sentence, as a downward departure would not have been likely even if the objection had been made more explicitly. The Government's position is well-taken.

"A district court's decision to depart downward is controlled by" 18 U.S.C. § 3553(b). *Bostic*, 371 F.3d at 874. The statute provides that, with limited exception, a "court shall impose a sentence of the kind, and within the range [determined by the Guidelines] unless the court finds that there exists an aggravating or mitigating circumstance of a kind, or to a degree, not adequately taken into consideration by the Sentencing Commission in formulating the

[G]uidelines that should result in a sentence different from that described." 18 U.S.C. § 3553(b)(1). Before a court departs from the Guidelines range, it "must determine that the case falls outside of the heartland of cases in [that] range." *Bostic*, 371 F.3d at 874 (citing *Koon v. United States,* 518 U.S. 81, 98 (1996)).

The Guidelines provide that "[a]ge (including youth) may be relevant in determining whether a departure is warranted, if considerations based on age, individually or in combination with other offender characteristics, are present to an unusual degree and distinguish the case from the typical cases covered by the [G]uidelines." U.S.S.G. § 5H1.1. Thus, a sentencing court may consider the defendant's age in imposing a sentence outside of the Guidelines range, but "only in exceptional circumstances." *Bostic*, 371 F.3d at 875 (citing U.S.S.G. § 5H1.1).

Even assuming that Smothers performed deficiently by failing to make an explicit age-recidivism argument in her position statement and at sentencing, this Court, in its discretion, most likely would not have departed downward. Taylor's "age-recidivism argument is, essentially, that the community's interest in safety, a factor to be considered under § 3553(a), still would be served by a below-Guidelines sentence because he is less likely to offend as he ages." *Taylor*, 800 F.3d at 715-16. As the Sixth Circuit found, this Court "did consider Taylor's personal characteristics," and "implicitly" "concluded that the community's interest in safety and deterrence would not be served by granting [him] a shorter sentence." *Id.*

Indeed, the Court noted at sentencing that "Congress has seen fit to prohibit felons from possessing firearms[,] [w]hich is evident in this case, based upon Mr. Taylor's previous record, many of which have been violent activity in possession of a firearm[,] [a]nd doubly so because it was as a result of a robbery or burglary." (No. 1:13-cr-10041-JDB-1, D.E. 65 at PageID 330.)

13

The Court determined that the 262-month, bottom-of-the-Guidelines sentence would reflect all relevant sentencing factors, including Taylor's violent and "extensive criminal history," and would serve to "protect the public from further crimes of the defendant." (*Id.*, D.E. 65 at PageID 331.) *See, e.g., United States v. Henry*, 722 F. App'x 496, 501 (6th Cir.) (rejecting age-recidivism challenge to substantive reasonableness of sentence, finding that "we can infer from the record that the district court knew about and considered [the defendant's] age when deciding the risk he posed to public safety"), *cert. denied*, 139 S. Ct. 70 (2018); *United States v. Pena*, No. 2:10-cr-2138-WJ, 2018 WL 6003538, at *13 (D.N.M. Nov. 15, 2018) (rejecting age-recidivism argument of defendant who was convicted of being a felon in possession of a firearm and using and carrying a firearm during and in relation to a crime of violence, relying in part on the United States Sentencing Commission's 2017 finding that "firearms offenders had a substantially higher rearrest rate across all age categories than drug trafficking offenders, who in turn had a higher rearrest rate across all age categories than fraud offenders," citing United States Sentencing Commission, "The Effects of Aging on Recidivism Among Federal Offenders" at 3 (Dec. 2017)).

Taylor would not likely have received a lower sentence for the additional reason that the sentence imposed was within—indeed, at the bottom of—the Guidelines range. *See, e.g.*, *Henry*, 722 F. App'x at 501 (rejecting age-recidivism challenge to within-Guidelines sentence); *United States v. Morgan*, 593 F. App'x 534, 536 (6th Cir. 2015) (per curiam) (affirming "sentence at the bottom of the [G]uidelines range" and distinguishing *Payton* on that ground); *see also United States v. Romans*, 823 F.3d 299, 314 (5th Cir.) (rejecting challenge to substantive reasonableness of sentence under which the defendant would be incarcerated until he was "almost [seventy],"

14

noting that "[i]n contrast to *Payton*, [the defendant] received a sentence that was not only within, but actually at the bottom of, the advisory Guidelines range."), *cert. denied*, 137 S. Ct. 195 (2016).

More to the point, the inmate cannot show that a downward departure from the Guidelines range would be warranted, as his criminal case does not fall outside the heartland of cases that the Sentencing Guidelines are meant to cover. When viewed in isolation or in combination with his medical issues, Petitioner's age on release from prison is not an exceptional circumstance warranting a downward departure. As noted, he will be approximately sixty-six or sixty-seven years old, which is substantially younger than the defendant in *Payton*, who would have been ninety-one at the time of release. *See, e.g.*, *United States v. Fortune*, ___ F. App'x ___, 2018 WL 6787564, at *7 (6th Cir. Dec. 26, 2018) (distinguishing *Payton* and finding sentence to be substantively reasonable where it was set to "expire well before [the defendant would] turn[] seventy"); *Henry*, 722 F. App'x at 501 (rejecting defendant's argument that his sentence was substantively unreasonable on the ground that he would be "in excess of [eighty-five] years old" upon release).

Petitioner thus has not shown a reasonable probability that he would have received a lower sentence had counsel more explicitly advanced an age-recidivism argument prior to and at the sentencing hearing. Because he has not established that he was prejudiced by his attorney's conduct, he is not entitled to relief on his ineffective assistance claims. *See Strickland*, 466 U.S. at 697 (a court may "dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice"). Claims 2 and 3 are DENIED.

For the foregoing reasons, the Amended Petition is DENIED.

APPEAL ISSUES

A § 2255 petitioner may not proceed on appeal unless a district or circuit judge issues a certificate of appealability ("COA"). 28 U.S.C. § 2253(c)(1); Fed. R. App. P. 22(b)(1). A COA may issue only if the petitioner has made a substantial showing of the denial of a constitutional right. 28 U.S.C. § 2253(c)(2)-(3). A substantial showing is made when the petitioner demonstrates that "reasonable jurists could debate whether (or, for that matter, agree that) the petition should have been resolved in a different manner or that the issues presented were 'adequate to deserve encouragement to proceed further.'" *Miller-El v. Cockrell,* 537 U.S. 322, 336 (2003) (quoting *Slack v. McDaniel*, 529 U.S. 473, 484 (2000)). "If the petition was denied on procedural grounds, the petitioner must show, 'at least, that jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right and that jurists of reason would find it debatable whether the district court was correct in its procedural ruling.'" *Dufresne v. Palmer*, 876 F.3d 248, 253 (6th Cir. 2017) (per curiam) (quoting *Slack*, 529 U.S. at 484).

In this case, reasonable jurists would not debate the correctness of the Court's decision to deny the Amended Petition. Because any appeal by Petitioner does not deserve attention, the Court DENIES a COA.

Pursuant to Federal Rule of Appellate Procedure 24(a), a party seeking pauper status on appeal must first file a motion in the district court, along with a supporting affidavit. Fed. R. App. P. 24(a). However, Rule 24(a) also provides that if, the district court certifies that an appeal would not be taken in good faith, the prisoner must file his motion to proceed *in forma pauperis* in the appellate court. *Id.*

In this case, for the same reason it denies a COA, the Court CERTIFIES, pursuant to Rule 24(a), that any appeal in this matter would not be taken in good faith. Leave to appeal *in forma pauperis* is therefore DENIED.[6]

IT IS SO ORDERED this 12th day of March 2019.

s/ J. DANIEL BREEN
UNITED STATES DISTRICT JUDGE

---

[6] If Petitioner files a notice of appeal, he must also pay the full $505.00 appellate filing fee or file a motion to proceed *in forma pauperis* and supporting affidavit in the Sixth Circuit Court of Appeals within thirty days.